UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BINGHAMTON-JOHNSON CITY JOINT SEWAGE
BD; CITY OF BINGHAMTON; and VILLAGE OF
JOHNSON CITY,

                     Plaintiffs,           3:12-CV-0553
                                              (GTS/DEP)
v.

AM. ALTERNATIVE INS. CORP.,

                     Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

HINCKLEY, ALLEN & SNYDER, LLP          ERIC F. EISENBERG, ESQ.
  Counsel for Plaintiffs                           JAMES J. BARRIERE, ESQ.
30 South Pearl Street, Suite 901               NATHAN R. SABOURIN, ESQ.
Albany, NY 12207

HANNIGAN LAW FIRM PLLC                 TERENCE S. HANNIGAN, ESQ.
  Counsel for Defendant
1881 Western Avenue, Suite 140
Albany, NY 12203

GLENN T. SUDDABY, United States District Judge

# DECISION and ORDER

       Currently before the Court, in this insurance action filed by Binghamton-Johnson City Joint Sewage Board, the City of Binghamton and the Village of Johnson City ("Johnson City") ("Plaintiffs") against Defendant American Alternative Insurance Corporation ("Defendant"), is Defendant's motion *in limine* to preclude the trial testimony, expert or otherwise, of Plaintiff's witness, Paul B. Nielander, pursuant to Fed. R. Evid. 702, 703, 401 and 403. (Dkt. No. 72.) For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I.      PARTIES ARGUMENTS ON DEFENDANT'S MOTION**

      **A.      Defendant's Memorandum of Law**

Generally, in its memorandum of law, Defendant asserts three arguments. (Dkt. No. 72, Attach. 1.) First, Defendant argues, Nielander's report and anticipated testimony fail to meet the expert opinion standards set forth in Fed. R. Evid. 702 for the following reasons: (a) as an initial matter, Neilander is not qualified as an expert in interpreting insurance policies under Fed. R. Evid. 702, *Daubert* and *Kumho Tire*, because his knowledge and experience are limited to insurance practices in other states and the words contained in insurance policies other than AAIC policies; (b) in any event, Fed. R. Evid. 702 requires that such expert testimony be "based on sufficient facts or data" and be "the product of reliable principles and methods," and here Neilander has no experience with (i) negotiating, drafting, or performing under an AAIC policy, (ii) handling claims or interpreting policies written in New York State, or (iii) drafting policies or otherwise participating in what he concedes is the "niche market" of providing insurance to sanitation districts; (c) indeed, the Southern District of New York has specifically held that a purported insurance expert could not testify as to his understanding of specific provisions of an insurance policy–or the import of specific words or phrases of various clauses contained therein–because the purported expert had nothing to do with negotiating, drafting, or performing under the insurance policy at issue in the case; and (d) moreover, Neilander is not qualified to offer expert analysis of *when* the structural failure of the wall occurred because he has no training or experience as an engineer. (*Id*.)

Second, Defendant argues, Nielander's report and anticipated testimony fail to satisfy the standards set forth in Fed. R. Evid. 703 for the following reasons: (a) Fed. R. Evid. 703 limits the

admissibility of hearsay testimony purporting to support expert testimony such that the probative value of the hearsay testimony must substantially outweigh its prejudicial effect; and (b) here, the probative value of the hearsay testimony contained in the policies of the insurance industry organization Insurance Services Office ("ISO") does not substantially outweigh the hearsay testimony's prejudicial effect because (i) there is no bona fide expert opinion that the ISO policies could legitimately support, (ii) the ISO policies are irrelevant to this case, and (iii) a danger exists that the hearsay testimony contained in the ISO policies will be used for its truth. (*Id.*)

Third, Defendant argues, Nielander's report and anticipated testimony fail to satisfy the standards set forth in Fed. R. Evid. 403 for the following reasons: (a) Fed. R. Evid. 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues, or if it would mislead the jury; (b) here, Nielander's opinion that "the AAIC property policy should cover any damage caused by the perils of collapse and or [sic] other applicable covered perils" has no probative value, because (i) as an initial matter, the Court has already deemed nonsensical (in its Decision and Order of May 13, 2015) the theory that it was not faulty design and workmanship but operating forces that caused the collapse, (ii) in any event, the stated purpose of Neilander's coverage review was the overtly biased directive to "evaluate how [the AAIC] policy . . . provides broader coverage," and (iii) Nielander complied with that directive by comparing the AAIC policy to other insurance contracts not involved in this action, which comparison thus has no bearing on this action; and (c) moreover, Nielander's efforts to rewrite the terms of the AAIC policy based on the terms of other insurance contracts will serve only to confuse the jury and obfuscate the actual policy language at issue. (*Id.*)

### B. Plaintiffs' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, Plaintiffs assert four arguments. (Dkt. No. 88.) First, Plaintiffs argue, Defendant's objection is too broad for the following reasons: (a) evidence should be excluded on a motion *in limine* only when it is clearly inadmissible on all potential grounds; (b) if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy and prejudice to be resolved in context; and (c) here, clearly at least some of Mr. Nielander's testimony is admissible. (*Id.*)

Second, Plaintiffs argue, Mr. Nielander's testimony satisfies the requirements of Fed. R. Evid. 702 for the following reasons: (a) while the Supreme Court in *Daubert* set forth a non-exclusive list of factors for courts to consider in assessing the reliability of an expert's reasoning or methodology, such factors have little applicability where, as here, the expert opinion is based on professional experience and there is no methodology or technique supporting it; (b) it is well-settled that insurance expert testimony is admissible (e.g., regarding the customary meaning of contract terms such as "loss," "claim," and "per occurrence"); (c) here, Mr. Nielander is expected to testify as to the meaning and usage of the term "all risk" insurance, the meaning and usage of the term "ensuing loss" and ensuing loss provisions, the meaning and usage of the term "collapse" as a peril in standard insurance policies, how standard form ISO policies compare to the policy purchased by Plaintiffs, and his review of the policy regarding coverage for the losses caused by the collapse; and (d) the fact that Mr. Nielander did not "negotiate" the particular insurance policy in question goes to the weight of his testimony, not its admissibility. (*Id.*)

Third, Plaintiffs argue, Mr. Nielander's testimony satisfies the requirements of Fed. R. Evid. 703 for the following reasons: (a) Defendant is incorrect that there is no bona fide expert opinion that the ISO policies could legitimately support; (b) because Mr. Nielander's testimony and supporting report qualify as "expert testimony" under Second Circuit law, he can base his opinion and testimony upon any documentation that experts in his particular field would reasonably rely on in forming an opinion on the subject, such as nationwide ISO insurance policy forms, which would be readily recognizable to anyone working in the industry; and (c) no danger exists that the statements contained in the ISO policies, which are not hearsay, will be used for their truth. (*Id.*)

Fourth, Plaintiffs argue, Mr. Nielander's testimony is relevant and will not cause confusion for the following reasons: (a) while the Court previously found Dr. Paul Carr's opinion concerning a concurrent cause of the wall collapse to be "nonsensical," that finding had nothing to do with Mr. Nielander's testimony or report in this matter; (b) because the non-exclusive list of factors presented in *Daubert* cannot be strictly applied where (as here) the opinion is based on professional experience and there is no underlying scientific methodology or technique to support it, the Court should focus on Mr. Nielander's experience and whether his testimony is reliable and relevant to the task at hand (which it is); and (c) Defendant's argument that a juror, properly instructed, will have issues understanding the difference between standard form insurance policies discussed by an insurance expert and the policy that is the subject of the case sets the bar too low. (*Id.*)

## II. GOVERNING LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, provides as follows:

5

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis removed).

The Supreme Court has explained that, under this rule, the trial judge stands as a "gatekeeper," charged with determining whether the proffered testimony satisfies a number of standards, including whether the proposed expert is qualified to give the proffered opinion, whether the expert's testimony rests on a reliable foundation, and whether the expert's testimony is relevant to the task at hand. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90, 597 & nn.7, 10 (1993); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).

"To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). In assessing whether a proposed expert is "qualified," the trial judge should remember the "liberal[] purpose" of Fed. R. Evid. 702, and remain "flexibl[e]" in evaluating the proposed expert's qualifications. *See United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985) (explaining that Fed. R. Evid. 702 "must be read in light of the liberalizing purpose of the rule"); *Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222, 227 (N.D.N.Y.1994) (Hurd, M.J.) ("[L]iberality and flexibility in evaluating qualifications should be the rule; the proposed expert should not be required to satisfy an overly narrow test of his own qualifications."), *aff'd without opinion*, 101 F.3d 68 (2d Cir. 1996).

Having said that, of course, "a district court may properly conclude that witnesses are insufficiently qualified . . . [where] their expertise is too general or too deficient." *Stagl v. Delta*, 117 F.3d 76, 81 (2d Cir.1997).

Regarding Fed. R. Evid. 702's requirement of reliability, in *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court set forth a non-exclusive list of factors for a trial court to use when assessing the reliability of expert testimony: (1) whether the expert's technique or theory can be, or has been, tested–that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied, and the existence and maintenance of standards and controls; and (4) whether the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94; *see also* Fed. R. Evid. 702, Advisory Committee Notes: 2000 Amendments. Again, this list is non-exhaustive and "[t]hese factors do not constitute . . . a 'definitive checklist or test'"; rather, "'[t]he inquiry envisioned by Rule 702 is . . . a flexible one.'" *Amorgianos*, 303 F.3d at 265-66 (quoting *Daubert*, 509 U.S. at 593-94). For example, other facts that may be considered include the fact that "experience in conjunction with other knowledge, skill, training or education . . . [may] provide a sufficient foundation for expert testimony," and "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702, Advisory Committee's Note; *see also Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). Having said that, "[c]ourts both before and after *Daubert* have found other factors relevant in determining whether

7

expert testimony is sufficiently reliable to be considered by the trier of fact." Fed. R. Evid. 702, Advisory Committee Notes: 2000 Amendments. These factors include the following: (1) whether the expert is "proposing to testify about matters growing naturally and directly out of research [he or she has] conducted independent of the litigation, or whether [he or she has] developed [his or her] opinions expressly for the purposes of testifying";[1] (2) whether the expert has unjustly extrapolated from an accepted premise to an unfounded conclusion;[2] and (3) whether the expect has adequately accounted for obvious alternative explanations for the plaintiff's condition.[3]

As for the related subject of the permissible bases of an expert's opinion testimony, Fed. R. Evid. 703 provides as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

Finally, with regard the trial court's gatekeeping role in determining whether the expert's testimony is relevant to the task at hand, Fed. R. Evid. 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).

[2] *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that in some cases a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered").

[3] *See Claar Burlington N.R.R.*, 29 F.3d 499, 502 (9th Cir.1994) (excluding testimony where expert failed to consider other obvious causes for plaintiff's condition).

evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis removed). Moreover, under Fed. R. Evid. 403, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III. ANALYSIS

After carefully considering the matter, Defendant's motion is granted in part and denied in part in the following ways: (1) Mr. Nielander's testimony shall be limited to assisting the jury in (a) understanding the general standard practices and customs of the insurance business (based on his training and experience), (b) understanding how this particular policy is structured and how its provisions relate to each other (again based on his training and experience), and (c) understanding what any ambiguous terms in the policy are *typically* understood to mean in other insurance policies (again based on his training and experience);[4] and (2) Mr. Neilander's testimony shall otherwise be precluded (e.g., he shall not be permitted to testify as to [a] the *usage* of the terms "all risk," "ensuing loss" and/or "collapse" in standard insurance policies, [b] how standard form ISO policies compare to the policy purchased by Plaintiffs, [c] his review of the policy regarding coverage for the losses caused by the collapse, [d] what this policy's terms actually mean, [e] what the customs, practices or standards are in the industry or market of insuring sanitation districts, [f] when the structural failure of the wall occurred, or [g] what the cause of the collapse was).

---

[4] "[A] provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *United States Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 572 (2d Cir. 1991). Plaintiffs must prove the existence of the above-referenced ambiguity before adducing expert testimony regarding the above-referenced typical meaning.

9

To the extent that Defendant's motion is granted, the Court's decision is based on the reasons provided by Defendant in its memorandum of law. *See, supra,* Part I of this Decision and Order. To the extent that Defendant's motion is denied, the Court's decision is based on the reasons provided by Plaintiff in its opposition memorandum of law. *Id.* To those reasons the Court would add only three points.

First, among the reasons for the Court's decision is its conclusion that, under Fed. R. Civ. P. 702, not only is any opinion proffered by Mr. Nielander regarding a sanitation-district insurance policy not reliable due to his lack of experience in that admittedly "niche" industry, but he is not *qualified* to render such an opinion, again due to his lack of experience in that "niche" industry. While often such a fact might go to the weight of an expert's testimony, not its admissibility, here the risk that Mr. Nielander will confuse the jury, if not outright invade its province, is too strong, given the legal and factual issues in this case and his intent to testify regarding whether the terms "ensuing loss" and/or "collapse" encompass what occurred at this sewage treatment plant. Moreover, the Court finds that the potential harm, if it materializes, could not be sufficiently ameliorated by a cautionary or curative instruction.

Second, Plaintiffs are incorrect when they assume that the potential jury confusion under Fed. R. Evid. 403 is limited to the risk that the jury will have issues understanding the difference between standard form insurance policies discussed by an insurance expert and the policy that is the subject of the case. Rather, what the Court understands Defendant to be arguing, or at least what the Court believes, is that the potential jury confusion encompasses the significant risk that the jury will (a) misidentify the policy in which a particular provision is contained, (b) consider the provisions in the standard form insurance policies as constituting an industry standard, the deviation from which subjects Defendant to legal liability, and/or (c) believe that a given

provision in the policy in this case *must* mean something because the expert has testified that it is "broader" or "narrower" than a provision in the standard form insurance policies (the meaning of which the expert *knows*). These risks substantially outweigh the probative value of the evidence of the standard form insurance policies and Mr. Nielander's opinions regarding them.

Third, while Plaintiffs are correct that it was Dr. Paul Carr's opinion that the Court previously found to be "nonsensical," Plaintiffs are incorrect that the Court's finding had "nothing to do with Mr. Nielander's testimony or report in this matter." (Dkt. No. 88, at 14.) Rather, Dr. Carr's opinion that it was not faulty design and workmanship but operating forces that caused the collapse appears related to Mr. Neilander's proffered testimony with regard to the meaning and usage of the term "collapse." This fact exacerbates the danger of unfair prejudice, confusion of the issues and/or misleading the jury under Fed. R. Evid. 403.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion *in limine* to preclude the trial testimony, expert or otherwise, of Plaintiff's witness, Paul B. Nielander, pursuant to Fed. R. Evid. 702, 703, 401 and 403 is **GRANTED in part** and **DENIED in part**, as set forth above in Part III of this Decision and Order.

Dated: August 25, 2015
 Syracuse, New York

*[signature]*
Hon. Glenn T. Suddaby
U.S. District Judge